UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JACQUELINE ANDREWS,

                           Plaintiff,

   -against-

ASA COLLEGE, INC.,

                           Defendant.
-------------------------------------------------------------------X

**COMPLAINT**

**Docket No.:**

Jury Trial Demanded

JACQUELINE ANDREWS ("Plaintiff"), by and through her attorneys, BORRELLI & ASSOCIATES, P.L.L.C., as and for her Complaint against ASA COLLEGE, INC. ("Defendant"), alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

## NATURE OF CASE

1. This is a civil action based upon willful violations that the Defendant committed of Plaintiff's rights guaranteed to her by: (i) the overtime provisions of the Fair Labor Standards Acts ("FLSA"), 29 U.S.C. § 207(a); (ii) the FLSA's minimum wage provisions, 29 U.S.C. § 206(a); (iii) the overtime provisions of the New York Labor Law ("NYLL"), N.Y. Lab. Law § 160; N.Y. Comp. Codes R. & Regs. ("NYCCRR") tit. 12, § 142-2.2; (iv) the minimum wage provisions of the NYLL, N.Y. Lab. Law §652(1); (v) the NYLL's provisions that require an employer to pay wages to an employee in accordance with agreed upon and conditioned terms of employment, §§ 190, 191, and 663(1); (vi) the requirement that employers furnish employees with wage statements containing specific categories of accurate information under the NYLL, § 195(3); (vii) the requirement that employers furnish employees with a wage notice at the time of hiring and on an annual basis containing specific categories of information under the NYLL, §

1

195(1); (viii) the anti-race discrimination provisions of the Civil Rights Act of 1866, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981 ("Section 1981"); (ix) the anti-race discrimination provisions of the New York State Human Rights Law § 290 *et seq.* (the "NYSHRL"); (x) the anti-race discrimination provisions of the New York City Human Rights Law (the "NYCHRL"); and (xi) any other claim(s) for relief that can be inferred from the facts set forth herein.

2. Plaintiff commenced her employment with Defendant in September 2009 as an Admissions Recruiter, and worked in that capacity until March 2011, at which time she began working in the Defendant's Financial Aid Department, where she worked until her termination in August 2013.

3. Throughout her employment, in both positions, Defendant required Plaintiff to work, and Plaintiff did in fact work, seventy-seven hours each week during the year. Defendant, however, during its "overtime off-season" that lasted thirty-four weeks each year, while still requiring Plaintiff to work seventy-seven hours per week, did not permit Plaintiff to record the overwhelming majority of the hours that she worked each week in excess of forty. For those overtime hours that the Defendant forced Plaintiff to work but did not permit her to record, the Defendant paid Plaintiff nothing – not the minimum wage rate, not her straight-time rate, and certainly not at the rate of one and one-half times her straight-time rate. Moreover, during this "overtime off-season," for the few hours that Plaintiff worked over forty each week that the Defendant permitted her to record, for the overwhelming majority of those recorded hours, the Defendant paid Plaintiff only at her straight-time rate and not at one and one-half times that amount. These practices are in flagrant violation of the FLSA, NYLL, and the NYCCRR.

4. Additionally, Defendant failed to furnish Plaintiff with accurate and/or complete wage statements on each payday, nor did it provide Plaintiff with a wage notice at the time of her hire or on an annual basis, containing all of the information that the NYLL requires.

5. Plaintiff, African American, also brings this action to seek redress for Defendant's egregious race discrimination in the form of a hostile work environment and disparate treatment, which culminated in Plaintiff's termination. Plaintiff's termination was particularly outrageous in that she had at all times performed her job duties in an exemplary manner.

## JURISDICTION AND VENUE

6. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. §§ 201, *et seq*. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all state law claims.

7. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as all actions comprising the claims for relief occurred within this judicial district, and pursuant to 28 U.S.C. § 1391(b)(1), as Defendant resides within this judicial district.

## PARTIES

8. At all relevant times herein, Plaintiff was and is a resident of Brooklyn, New York, and is a "person" and an "employee" entitled to protection as defined by the FLSA, NYLL, NYCCRR, Section 1981, the NYSHRL, and the NYCHRL.

9. At all relevant times herein, Defendant is a domestic business corporation with its principal place of business located at 151 Lawrence Street, Brooklyn, New York 11201. Defendant is a college and according to its own website, maintains a campus in New York City, and confers degrees in accounting, computer programming, information technology, and medical assisting.

10. At all relevant times herein: Defendant was and is an "employer" within the meaning of the FLSA, NYLL and NYCCRR. Defendant's qualifying annual business exceeds $500,000, and the Defendant and its employees are all engaged in interstate commerce within the meaning of the FLSA because they recruit and enroll students from states other than New York, which subjects Defendant to the FLSA's overtime requirements as an enterprise. Moreover, throughout her employment, Plaintiff actively recruited students from states outside of New York. This independently subjects the Defendant to the FLSA's overtime requirements with respect to Plaintiff. Finally, Defendant is an "employer" that "employs" four or more "employees" within the meaning of the NYSHRL and the "NYCHRL," as well as a "person" within the meaning of Section 1981 and the NYCHRL.

## BACKGROUND FACTS

### Defendant's Unlawful Wage Practices

11. In approximately September 2009, Plaintiff began her employment with Defendant as an Admissions Recruiter. In that capacity, Plaintiff's job consisted of calling prospective students to discuss the advantages of enrolling at ASA College.

12. In March 2011, Defendant transferred Plaintiff to its Financial Aid Department, where she worked until her termination in August 2013. In this capacity, Plaintiff's job consisted of advising students on how to avoid a default on their student loans.

13. For her first forty hours worked each week from in or around September 2009 until in or around September 2010, Defendant compensated Plaintiff at an hourly rate that amounts to $10.00 per hour.

14. For her first forty hours worked each week from in or around September 2010 until in or around July 2011, Defendant compensated Plaintiff at an hourly rate that amounts to $13.00 per hour.

15. For her first forty hours worked each week from in or around July 2011 until in or around July 2012, Defendant compensated Plaintiff at an hourly rate that amounts to $13.65 per hour.

16. For her first forty hours worked each week from in or around July 2012 until in or around January 2013, the Defendant compensated Plaintiff at an hourly rate that amounts to $14.27 per hour.

17. For her first forty hours worked each week from in or around January 2013 until her termination in August 2013, the Defendant compensated Plaintiff at an hourly rate of $14.91 per hour.

18. Throughout Plaintiff's employment, and remaining unchanged by her move between departments, the Defendant required Plaintiff to work, and Plaintiff did in fact work, seven days per week, Mondays through Wednesdays from 7:00 a.m. to 7:00 p.m., Thursdays and Fridays from 8:00 a.m. to 8:00 p.m.; Saturdays from 8:00 a.m. to 6:00 p.m., and Sundays from 9:00 a.m. to 4:00 p.m. The Defendant never permitted Plaintiff to take scheduled or uninterrupted breaks during the workday. Thus, Defendant required Plaintiff to work, and Plaintiff did in fact work, seventy-seven hours each week.

19. Defendant designated thirty-four weeks each year as its "overtime off-season." The "overtime off-season" occurred every February 16th through April 30th, June 16th through August 31st, and October 16th through December 31st, for a total of thirty-four weeks each year.

20. For each week of work throughout Plaintiff's employment during the "overtime off-season," Defendant paid Plaintiff her regular rate of pay for the overwhelming majority of hours that Defendant recorded, or that Defendant allowed Plaintiff to record, that Plaintiff worked each week. Defendant did not compensate Plaintiff for the overwhelming majority of hours it recorded that Plaintiff worked each week in excess of forty at the statutorily required overtime rate of one and one-half times her regular rate of pay.

21. For example, during the pay period beginning March 12, 2012 and ending March 25, 2012, Defendant recorded that Plaintiff worked 96.10 hours during that two week stretch, and compensated Plaintiff at her straight time regular rate for all those hours, even though 16.10 hours were in excess of forty hours per week during that pay period. Thus, Defendant did not compensate Plaintiff at the required overtime rate for those recorded hours.

22. In addition, and making matters much worse, is that during this "overtime off season," even though Plaintiff's hours remained unchanged from the rest of the year - - meaning that she continued to work the same seventy-seven-hour schedule - - Defendant did not permit Plaintiff to record the majority of her hours worked over forty each week, and then did not compensate Plaintiff for those hours at *any* rate of pay – not the minimum wage rate, her straight time rate, and certainly not at her overtime rate.

23. For example, during that same pay period beginning March 12, 2012 and ending March 25, 2012, even though Plaintiff worked 154 hours over that two week stretch, Defendant failed to compensate Plaintiff at any rate of pay for the 28.95 hours that she worked during each of those two weeks that were in excess of forty.

24. This pay period is representative of how Defendant paid Plaintiff during the "overtime off season" throughout the course of Plaintiff's employment with Defendant.

6

25. The Defendant's failure to pay Plaintiff in accordance with the FLSA, NYLL, and NYCCRR was flagrant and willful. One of many facts supporting this is that when Defendant transferred Plaintiff to the financial department, even though it continued to require her to work seventy-seven hours per week, Defendant classified her as "part-time" in some sort of misguided attempt to avoid having to provide her with the health benefits that it provided to full-time employees.

26. Defendant acted in this reckless manner in an effort to maximize its profits and minimize labor costs.

27. In addition to Defendant's wage and hour violations described above, on each biweekly occasion when it paid Plaintiff, Defendant failed to provide Plaintiff with wage statements that accurately set forth the number of hours that she worked each pay period and the number of overtime hours that she worked each pay period.

28. Further, Defendant failed to provide Plaintiff with an accurate wage notice at the time of her hire, and annually, indicating her rate of pay, including overtime pay, how Plaintiff was to be paid, her regular pay day, the official name of Defendant and its address and phone number, and whether any allowances were taken as part of the minimum wage.

**Defendant's Race Discrimination**

29. Plaintiff is a black female.

30. Beginning with the commencement of her employment with Defendant, and continuing up until her termination, Plaintiff was an exemplary employee who consistently received positive feedback from her supervisors and co-workers. While an Admissions Recruiter, Defendant celebrated Plaintiff being the most productive recruiter in enrolling students at the college.

7

31. In March 2011, Vicky Shtamler, Director of Financial Aid, Caucasian, transferred Plaintiff to the Financial Aid Department and listed her as a "part-time employee," and required her to serve as the assistant to Janet Torres, Latino, and the Defendant's Default Specialist. Both Shtamler and Torres told Plaintiff that Defendant would reclassify her as a permanent "full-time" employee as it does to all part-time employees after serving three months as a "part-time" assistant. Additionally, both Shtamler and Torres were responsible for supervising Plaintiff from March 2011 until her termination in August 2013.

32. Defendant has a lengthy history of discriminatory treatment towards its black employees.

33. By way of example, both Shtamler and Torres frequently directed Plaintiff to "stay in the basement," "stay under the radar" and not to come into the financial aid department's offices because the Defendant's President, Alex Shchegol, felt that "black people were stupid."

34. After three months as a "part-time" assistant, Plaintiff confronted both Shtamler and Torres and asked why she was not appointed to a full-time position. Both Shtamler and Torres told Plaintiff that "[Mr. Shchegol] did not like black people and she would never become a permanent full-time employee" in financial aid.

35. In or around June 2012, Plaintiff was sitting at the front desk in the Financial Aid Department when Shchegol entered the offices.

36. Shchegol told Shtamler, in front of Plaintiff, that he "did not want Black people sitting at the front desk."

37. Defendant subsequently hired Vivian (last name unknown), Latino, as a part-time assistant in the Financial Aid Department. After three months, Vivian was promoted to a full-time employee.

38. In response, Plaintiff immediately questioned Torres about whether Vivian was made "full-time" because she was Puerto Rican, and not black. Torres offered no explanation to Plaintiff.

39. Plaintiff continued to work for Defendant as a "part-time" assistant.

40. Defendant kept its promise that a black person would not be promoted to a "full-time" employee in the Financial Aid Department and never promoted Plaintiff. Instead, Defendant terminated Plaintiff's employment without any reason in August 2013, even though her performance was exemplary. The Defendant did not provide Plaintiff with *any* reason for the termination.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANT
*Unpaid Overtime under the FLSA*

41. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

42. 29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for any hours worked exceeding forty in a workweek.

43. As described above, Defendant is an employer within the meaning of the FLSA while Plaintiff is an employee within the meaning of the FLSA.

44. As also described above, Plaintiff worked in excess of forty hours each week, yet Defendant failed to compensate Plaintiff in accordance with the FLSA's overtime provisions.

45. The Defendant's actions were in willful violation of the FLSA.

46. Plaintiff is entitled to her overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times her respective regular rate of pay.

47. Plaintiff is also entitled to liquidated damages, attorney's fees, and costs for the Defendant's violations of the FLSA's overtime provisions.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANT
### *Minimum Wage Violations of the FLSA*

48. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

49. 29 U.S.C. § 206(a) prescribes a minimum wage that employers must pay to their employees for each hour worked.

50. As described above, Defendant is an employer within the meaning of the FLSA, while Plaintiff is an employee within the meaning of the FLSA.

51. As also described above, Defendant did not compensate Plaintiff at the minimum hourly rate required by the FLSA for all hours worked.

52. Defendant's actions were in willful violation of the FLSA.

53. Plaintiff is entitled to payment at the minimum wage for every hour that she worked for Defendant pursuant to the FLSA's minimum wage provisions.

54. Plaintiff is entitled to liquidated damages, attorney's fees, and costs for Defendant's violations of the FLSA's minimum wage provisions.

## THIRD CLAIM FOR RELIEF AGAINT DEFENDANT
### *Unpaid Overtime under the NYLL and NYCCRR*

55. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

56. NYLL § 160 and NYCCRR tit. 12, § 142-2.2 require employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for any hours worked exceeding forty in a workweek.

10

57. As described above, Defendant is an employer within the meaning of the NYLL, while Plaintiff is an employee within the meaning of the NYLL.

58. As also described above, Plaintiff works in excess of forty hours each week, yet Defendant failed to compensate Plaintiff in accordance with the NYLL's and NYCCRR's overtime provisions.

59. The Defendant's actions were in willful violation of the NYLL and NYCCRR.

60. Plaintiff is entitled to overtime pay for all hours worked per week in excess of forty at one and one-half times her regular rates of pay.

61. Plaintiff is also entitled to liquidated damages, interest, attorney's fees, and costs for the Defendant's violation of the NYLL's and NYCCRR's overtime provisions.

## FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT
### *Minimum Wage Violations of the NYLL and NYCCRR*

62. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

63. NYLL § 652(1) and the executing provisions of 12 NYCCRR 142-2.1 prescribe a minimum wage that employers must pay to their employees for each hour worked.

64. As described above, Defendant is an employer within the meaning of the NYLL and NYCCRR, while Plaintiff is an employee within the meaning of the NYLL and NYCCRR.

65. As also described above, Defendant did not compensate Plaintiff at the minimum hourly rate required by the NYLL and NYCCRR for all hours worked.

66. Defendant's actions were in willful violation of the NYLL and NYCCRR.

67. Plaintiff is entitled to payment at the minimum wage for every hour that she worked for Defendant pursuant to the NYLL's and NYCCRR's minimum wage provisions.

68. Plaintiff is also entitled to liquidated damages, interest, attorney's fees, and costs for the Defendant's violations of the NYLL's and NYCCRR's minimum wage provisions.

### FIFTH CLAIM FOR RELIEF AGAINST DEFENDANT
*Failure to Pay Wages in Violation of the NYLL*

69. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

70. NYLL §§ 190, 191, and 663(1) require that employers pay wages to their employees in accordance with the agreed terms of employment.

71. Defendant failed to compensate Plaintiff at her regular rate of pay for each hour that she worked in accordance with her terms of employment.

72. Defendant's actions were in willful violation of the NYLL.

73. Plaintiff is entitled to recover, at her regular rate of pay, for all hours that she worked for Defendant but for which she was not compensated.

74. Plaintiff is also entitled to liquidated damages, interest, and attorney's fees for Defendant's failure to pay Plaintiff her wages in accordance with the agreed upon terms of employment.

### SIXTH CLAIM FOR RELIEF AGAINST DEFENDANT
*Failure to Furnish Proper Wage Statements in Violation of the NYLL*

75. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

76. N.Y. Lab. Law § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

77. As described above, the Defendant willfully failed to furnish Plaintiff with accurate wage statements containing the criteria required under the NYLL.

78. Pursuant to N.Y. Lab. Law § 198(1-d), the Defendant is liable to Plaintiff in the amount of $100 for each failure of this sort.

79. For its failure, besides the statutory penalties, the Defendant is also liable to Plaintiff for liquidated damages and attorneys' fees.

### SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANT
*Failure to Furnish Proper Wage Notices in Violation of the NYLL*

80. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

81. NYLL § 195(1) requires that employers provide employees with a wage notice at the time of hire and on an annual basis containing accurate, specifically enumerated criteria.

82. As described above, the Defendant willfully failed to provide Plaintiff with a wage notice containing the criteria enumerated under the NYLL.

83. Pursuant to NYLL § 198(1-b), the Defendant is liable to Plaintiff in the amount of $50 for each workweek after the violations initially occurred.

84. For its failures, in addition to the statutory penalties, the Defendant is also liable to Plaintiff for liquidated damages, attorneys' fees, and costs.

### EIGHTH CLAIM FOR RELIEF AGAINST DEFENDANT
*Race Discrimination Under the Civil Rights Act, Section 1981*

85. Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

86. Defendant discriminated against Plaintiff on the basis of her race (African American) in violation of Section 1981 by denying her the same terms and conditions of

employment available to other employees, including but not limited to denying her the opportunity to work in an employment setting free of unlawful discrimination.

87. Defendant discriminated against Plaintiff on the basis of her race in violation of Section 1981 by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent a hostile work environment that included, among other things, severe or pervasive racial discrimination against Plaintiff.

88. As a direct and proximate result of Defendant's discriminatory and unlawful conduct in violation of Section 1981, Plaintiff has suffered and continues to suffer monetary and/or non-economic damages, including loss of future income, compensation and benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of damages.

89. Defendant's unlawful and discriminatory action constitutes malicious, willful, and wanton violations of Section 1981, for which Plaintiff is entitled to an award of punitive damages.

### NINTH CLAIM FOR RELIEF AGAINST DEFENDANT
*Race Discrimination Under the NYSHRL*

90. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

91. The NYSHRL forbids any employer or agent thereof from discriminating against an employee on account of that employee's race.

92. Defendant is an "employer" and "person," and Plaintiff is an "employee" within the meaning of the NYSHRL.

93. As described above, Defendant discriminated against Plaintiff in violation of the

NYSHRL by denying her the same terms and conditions of employment available to other employees, including but not limited to denying her the opportunity to work in an employment setting free of unlawful discrimination.

94. Defendant discriminated against Plaintiff on the basis of her race in violation of the NYSHRL by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent a hostile work environment that included, among other things, severe or pervasive racial discrimination against Plaintiff.

95. As a direct and proximate result of the Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer monetary and/or non-economic damages, including, but not limited to, loss of future income, compensation and benefits, mental anguish and emotional distress, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

## TENTH CLAIM FOR RELIEF AGAINST DEFENDANT
*Race Discrimination under the NYCHRL*

96. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

97. The NYCHRL prohibits discrimination in the terms, conditions, and privileges of employment on the basis of, *inter alia*, an individual's race and national origin.

98. As described above, Defendant discriminated against Plaintiff in violation of the NYCHRL by denying her the same terms and conditions of employment available to other employees, including but not limited to denying her the opportunity to work in an employment setting free of unlawful discrimination.

99. Defendant discriminated against Plaintiff on the basis of her race in violation of the NYCHRL by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent a hostile work environment.

100. As a result of Defendant's discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other employment benefits, and has suffered other monetary damages and compensatory damages for, *inter alia*, mental anguish, emotional distress, humiliation, and loss of reputation and future professional opportunities.

101. Defendant acted intentionally and with malice and reckless indifference to Plaintiff's rights under the NYCHRL and are thereby liable to Plaintiff for punitive damages under the NYCHRL.

## DEMAND FOR A JURY TRIAL

102. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, demands judgment against Defendant as follows:

a. Preliminary and permanent injunctions against Defendant and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

b. A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned United States and New York State laws.

c. An order restraining Defendant from any retaliation against Plaintiff for participation in any form in this litigation;

d. Damages that Plaintiff has sustained as a result of the Defendant's conduct, including all unpaid wages and any short fall between wages paid and those due under the law, back pay, front pay, general and special damages for lost compensation and employee benefits that she would have received but for the Defendant's conduct, and out-of-pocket losses that Plaintiff has incurred due to the Defendant's conduct;

e. An award for all non-monetary and/or compensatory damages, including but not limited to, compensation for severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

f. An award of damages in an amount to be determined at trial to compensate Plaintiff for harm to her professional and personal reputations and loss of career fulfillment;

g. Punitive damages to the extent authorized by law in an amount commensurate with Defendant's ability and so as to deter future unlawful conduct;

h. Liquidated damages and all other statutory penalties as recoverable under the FLSA and New York Labor Law;

i. Awarding Plaintiff costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

j. Pre-judgment and post-judgment interest, as provided by law; and

k. Granting Plaintiff other and further relief as this Court finds necessary and proper.

Dated: Great Neck, New York
       November 24, 2014

>Respectfully submitted,
>BORRELLI & ASSOCIATES, P.L.L.C.
>*Attorneys for Plaintiff*
>1010 Northern Boulevard, Suite 328
>Great Neck, New York 11021
>Tel. (516) 248 - 5550
>Fax. (516) 248 – 6027
>
>By: _/s/ Cherice P. Vanderhall_
>CHERICE P. VANDERHALL (CV6805)
>ALEXANDER T. COLEMAN (AC 8151)
>MICHAEL J. BORRELLI (MB 8533)